IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AUTO CLUB INSURANCE ASSOCIATION,<br>            Plaintiff,<br><br>v.<br><br>MENARD INC., SABER ALI, and ROBERT ESTOPINAN,<br><br>            Defendants.<br>------------------------------------------------------<br>MENARD INC. and SABER ALI,<br><br>            Counter-Plaintiffs,<br><br>v.<br><br>AUTO CLUB INSURANCE ASSOCIATION,<br><br>            Counter-Defendant. | Case No. 20 C 4567<br><br>Jeffrey T. Gilbert<br>United States Magistrate Judge |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a complaint and counterclaim that assert mirror causes of action for declaratory judgment brought pursuant to 28 U.S.C §§ 2201 and 2202. Plaintiff/Counter-Defendant Auto Club Insurance Association ("ACIA") filed its complaint for declaratory judgment seeking a finding that ACIA does not have any duty to defend or indemnify Defendants/Counter-Plaintiffs Menard, Inc. ("Menard") and its authorized agent/employee Saber Ali ("Ali") under its Policy No. AUTO 48817858 for an underlying negligence lawsuit brought against Menard and Ali by ACIA's insured, Robert Estopinan ("Estopinan"). *See* ACIA's Complaint for Declaratory Judgment [ECF No. 1]. Defendants/Counter-Plaintiffs

Menard and Ali answered the complaint and filed a counterclaim for declaratory judgment, seeking a finding that ACIA does have a duty to defend them in the underlying negligence lawsuit. *See* Menard's and Ali's Corrected Answer and Counterclaim [ECF No. 10]. The parties filed cross-motions for summary judgment. *See* [ECF Nos. 26, 30]. The motions are full briefed and ripe for decision.

## BACKGROUND

### I. Underlying Lawsuit

The following facts are taken from Menard's and Ali's Statement of Uncontested Facts in Support of their Motion for Summary Judgment and their Statement of Additional Facts in Opposition to ACIA's Motion for Summary Judgment, which are not disputed by ACIA.[1] This matter arises from an underlying civil lawsuit ("Underlying Lawsuit") filed by Estopinan in the Circuit Court of DuPage County, Illinois on October 2, 2019, which is captioned *Robert Estopinan v. Menard, Inc. d/b/a Menards*, Case No. 2019 L 001104. Menard's and Ali's SOF [ECF No. 31], at ¶28; ACIA's Responses to Menard's and Ali's SOF [ECF No. 37], at ¶28. The operative pleading in the Underlying Lawsuit is Estopinan's Second Amended Complaint ("SAC"), which was filed on December 11, 2019 and contains two negligence counts. Menard's and Ali's SOF [ECF No. 31], at ¶32; ACIA's Responses to Menard's and Ali's SOF [ECF No. 37], at ¶32.

---

[1] *See generally* Menard's and Ali's Statement of Uncontested Facts ("SOF") in Support of Their Motion for Summary Judgment [ECF No. 31]; ACIA's Responses to Menard's and Ali's SOF [ECF No. 37]; Menard's and Ali's Statement of Additional Facts ("SOAF") in Opposition to ACIA's Motion for Summary Judgment [ECF No. 35]; and ACIA's Responses to Menard's and Ali's SOAF [ECF No. 41].

2

The following facts are alleged in Estopinan's SAC. *See generally* ACIA's Complaint for Declaratory Judgment [ECF No. 1], Ex. D. On September 2, 2018, Estopinan visited the Menard retail store located at 521 E. North Avenue, Glendale Heights, Illinois ("Menard Store") to pick up a special order of several interior doors. Menard's and Ali's SOF [ECF No. 31], at ¶13; ACIA's Responses to Menard's and Ali's SOF [ECF No. 37], at ¶13. Ali was an employee at the Menard Store who helped Estopinan load the doors onto his vehicle. Menard's and Ali's SOF [ECF No. 31], at ¶¶3, 24; ACIA's Responses to Menard's and Ali's SOF [ECF No. 37], at ¶¶3, 24. Estopinan alleges that Ali failed to properly secure or fasten the doors to the order selector he used to move the doors close to Estopinan's truck, and that Ali negligently operated the order selector while he loaded the doors onto Estopinan's vehicle. Menard's and Ali's SOF [ECF No. 31], at ¶31; ACIA's Responses to Menard's and Ali's SOF [ECF No. 37], at ¶31.

In the process of loading the doors onto his truck, Estopinan was hit by a door that had fallen from the order selector, and he was injured. Menard's and Ali's SOF [ECF No. 31], at ¶26; ACIA's Responses to Menard's and Ali's SOF [ECF No. 37], at ¶26. Estopinan alleges that the doors were improperly set against the rail of the order selector. Menard's and Ali's SOF [ECF No. 31], at ¶27; ACIA's Responses to Menard's and Ali's SOF [ECF No. 37], at ¶27 Estopinan also alleges Ali negligently failed to warn him about the "dangerous condition of the unsecured or improperly loaded wooden doors" that were being placed onto his vehicle. Menard's and Ali's

3

SOF [ECF No. 31], at ¶31(f); ACIA's Responses to Menard's and Ali's SOF [ECF No. 37], at ¶31.

On or about June 5, 2020, Menard notified ACIA of the Underlying Lawsuit and tendered its defense pursuant ACIA's Policy No. AUTO 48817858 (the "Policy") issued to Estopinan. Menard's and Ali's SOF [ECF No. 31], at ¶35; ACIA's Responses to Menard's and Ali's SOF [ECF No. 37], at ¶35. On August 4, 2020, ACIA filed its complaint for declaratory judgment seeking a finding that it does not have a duty to defend or indemnify Menard or Ali pursuant to its Policy for the claims and losses alleged in the Underlying Lawsuit. *See* ACIA's Complaint for Declaratory Judgment [ECF No. 1]. On October 6, 2020, Menard and Ali filed their answer and counterclaim for declaratory judgment, again seeking to trigger ACIA's duty to defend them under the Policy. *See* [ECF No. 8]. Menard and Ali filed a corrected answer and counterclaim on November 4, 2020. *See* Menard's and Ali's Corrected Answer and Counterclaim [ECF No. 10].

**II. The ACIA Insurance Policy**

ACIA issued Policy No. AUTO 48817858 to Estopinan, and that Policy was effective from June 11, 2018 to December 11, 2018. Menard's and Ali's SOF [ECF No. 31], at ¶5; ACIA's Responses to Menard's and Ali's SOF [ECF No. 37], at ¶5.

The ACIA Policy is attached as Exhibit A to ACIA's Complaint for Declaratory Judgment and contains the following language:

INSURING AGREEMENT

1. Subject to the Definitions, Exclusions, Conditions and Limits of Liability of this policy, we will pay compensatory damages for which

4

> an insured person is legally liable because of bodily injury or property damage arising out of an accident involving an insured car to which this coverage applies.
>
> 2. We will defend an insured person in any civil action to which this coverage applies, with the attorneys of our choice or settle any claim for these damages as we think appropriate. We will choose either our staff attorneys or private attorneys; both shall exercise their independent professional judgment in the defense of an insured person. However, we will not defend or settle after we have paid or offered our Limit of Liability for this coverage.

*See* ACIA's Complaint for Declaratory Judgment [ECF No. 1], at ¶14 and Exhibit A; *see also* Menard's and Ali's SOF [ECF No. 31], at ¶6; ACIA's Responses to Menard's and Ali's SOF [ECF No. 37], at ¶6. The ACIA Policy also contains the following definition of persons insured under the Policy:

> Insured Person(s) means:
>
> 1. For use of your car,
>
>    a. you and any resident relative,
>
>    b. any other person using it with your permission;

*See* ACIA's Complaint for Declaratory Judgment [ECF No. 1], at ¶15 and Exhibit A; *see also* Menard's and Ali's SOF [ECF No. 31], at ¶7; ACIA's Responses to Menard's and Ali's SOF [ECF No. 37], at ¶7.

## STANDARD OF REVIEW

Courts grant summary judgment when the movant shows that no genuine dispute of material fact remains and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "A factual dispute is 'genuine' only if a reasonable jury could find for either party." *Nichols v. Mich. City Plant Planning Dept.*, 755 F.3d 594, 599 (7th Cir. 2014) (internal quotation marks and citation omitted). Courts

appropriately grant summary judgment when "no reasonable jury could rule in favor of the nonmoving party." *See Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 879 (7th Cir. 2016) (citation omitted). On cross-motions for summary judgment, each movant must satisfy these requirements. *See Cont'l Cas. Co. v. Northwestern Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005).

When considering ACIA's Motion for Summary Judgment [ECF No. 26], the Court views all evidence in the light most favorable to Menard and Ali, and when considering Menard's and Ali's Motion for Summary Judgment [ECF No. 30], the Court views all evidence in the light most favorable to ACIA. *See e.g., Hinsdale v. Village of Westchester, Illinois*, No. 15 C 4926, 2017 WL 991489, at *3 (N.D. Ill. Mar. 15, 2017) (citing *Int'l Bhd. Of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002)). Nonmoving parties still must put forth enough evidence to support reasonable inferences, as courts "draw only the reasonable inferences" and "are not required to draw every conceivable inference from the record." *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009) (internal quotations and citations omitted); *see also Cordon v. Centex Homes*, 835 F.Supp.2d 543, 548 (N.D. Ill. 2011).

## DISCUSSION

The dispositive issue before the Court is whether the ACIA Policy is triggered on the facts alleged in the Underlying Lawsuit and whether ACIA thus has a duty to defend and/or indemnify Menard and Ali in the Underlying Lawsuit. The parties agree that Illinois law controls the construction and application of the Policy's terms.

6

In Illinois, "the interpretation of an insurance policy is a question of law that is properly decided by way of summary judgment." *JAR Labs. LLC v. Great Am. E & S Ins. Co.*, 945 F. Supp.2d 937, 942 (N.D. Ill. 2013) (citing *BASF AG v. Great American Assur. Co.,* 522 F.3d 813, 818-19 (7th Cir. 2008)).

**I. ACIA Has a Duty to Defend Menard and Ali in the Underlying Lawsuit**

The fundamental premise of ACIA's argument is that it does not have any obligation to defend or indemnify Menard and Ali in the Underlying Lawsuit because, pursuant to the terms of its Policy, insurance coverage has not been triggered. In response, Menard and Ali argue that the facts alleged in the Underlying Lawsuit do trigger insurance coverage under ACIA's Policy, and ACIA does have a duty to defend them. The Court agrees with Menard and Ali that ACIA has an obligation to defend them in the Underlying Lawsuit.

The Court begins its analysis in this case by discussing the standards a court must use to determine whether an insurer is obligated to defend its insured. As a threshold matter, a court looks to the allegations in the underlying complaint and compares those allegations to the relevant provisions of the insurance policy at issue. *Outboard Marine Corp. v. Liberty Mutual Ins. Co.*, 154 Ill.2d 90, 107-08, 180 Ill. Dec. 691, 607 N.E.2d 1204 (1992); *see also Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 215 Ill.2d 146, 154-55, 293 Ill. Dec. 594, 828 N.E.2d 1092 (2005); *OneBeacon America Insurance Co. v. City of Zion*, 119 F.Supp.3d 821, 832 (N.D. Ill. 2015). If the facts alleged in the complaint fall within, or potentially within, the

language of the insurance policy, the insurer's duty to defend arises. *Outboard Marine Corp.*, 154 Ill.2d at 108.

A court's primary objective when construing the language of an insurance policy is to ascertain and give effect to the intentions of the parties as expressed in the agreement. *Crum & Forester Managers Corp. v. Resolution Trust Corp.*, 146 Ill.2d 384, 391, 189 Ill. Dec. 756, 620 N.E.2d 1073 (1993). A court must read the insurance policy as a whole, and if the terms of the policy are clear and unambiguous, they must be given there plain and ordinary meaning. *Outboard Marine Corp.*, 154 Ill.2d at 108. Conversely, if the terms of the policy are susceptible to more than one meaning, they are considered ambiguous and will be construed strictly against the insurer who drafted the policy. *Outboard Marine Corp.*, 154 Ill.2d at 108-09. In addition, provisions that limit or exclude coverage are to be construed liberally in favor of the insured and against the insurer. *Liberty Mutual Ins. Co. v. Zurich Ins. Co.*, 402 Ill.App.3d 37, 39, 341 Ill. Dec. 363, 930 N.E.2d 573 (1st Dist. 2010) (citing *American States Ins. Co. v. Koloms*, 177 Ill.2d 473, 479, 227 Ill. Dec. 149, 687 N.E.2d 72 (1997)).

In particular to this case, "[a]n insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the underlying complaints that the allegations fail to state facts which bring the case within, the policy's coverage." *General Ins. Co. of America v. Clark Mall Corp.*, 2010 WL 2901788, at *3 (N.D Ill. July 26, 2010) (citing *U.S. Fidelity & Guar. Co. v. Wilkin Insulation Co.*, 144 Ill.2d 64, 73, 161 Ill. Dec. 280, 578 N.E.2d 926 (1991)). On the other hand, if it is clear from the face of the underlying complaint that the allegations fail to state

8

facts that bring the case within the policy's coverage, then the insurer has no duty to defend. *Connecticut Indemnity Co. v. DER Travel, Inc.*, 328 F.3d 347, 349 (7th Cir. 2003).

ACIA first argues that the Court is constrained to look at Estopinan's SAC only to determine whether the duty to defend has been triggered. The Court disagrees. When analyzing whether an insurer has a duty to defend, the court must center its analysis on the underlying action "because the insurer must determine whether it has an obligation to defend at the outset of the litigation." *OneBeacon*, 119 F.Supp.3d at 832-33 (citing *Travelers Ins. Companies v. Penda Corp.*, 974 F.2d 823, 927 (7th Cir. 1992)). Generally, a court may refer only to the allegations of the complaint to determine whether an insurance company has a duty to defend. *Pekin Ins. Co. v. Wilson*, 237 Ill.2d 446, 456, 341 Ill. Dec. 497, 930 N.E.2d 1011 (Ill. 2010) (citing *Zurich Insurance Co. v. Raymark Industries, Inc.*, 118 Ill.2d 23, 112 Ill. Dec. 684, 514 N.E.2d 150 (1987)). Illinois, however, permits a court to look beyond the allegations in the underlying complaint so long as the court does not determine an issue critical to the underlying action. *Pekin,* 237 Ill.2d at 456, 461; *see also General Ins. Co. of America*, 2010 WL 2901788, at *4. A court may consider not only the underlying and instant pleadings, but other evidence as well. *Id.* (citing *Envirodyne Engineers, Inc.* and *American Economy Insurance Co. v. Holabird & Root*, 382 Ill.App.3d 1017, 1022-23, 320 Ill. Dec. 97, 886 N.E.2d 1166 (1st Dist. 2008)).

In this case, the Court does not need to look farther than the actual language in ACIA's Policy, the allegations in the SAC in the Underlying Lawsuit, the statement

9

of undisputed facts submitted by Menard and Ali in support of their motion for summary judgment, and ACIA's responses to those facts to determine whether a duty to defend exists in this case. As set forth above and under Illinois law, this Court may consider the undisputed facts submitted by ACIA and Menard and Ali in support of their respective motions for summary judgment. Even though those facts rely on evidence outside of the four corners of the SAC, it would be non-sensical for the Court not to consider them because they are not disputed. Stated another way, with emphasis, <u>ACIA does not dispute any of the facts or additional facts submitted by Menard and Ali in support of their motion for summary judgment</u>.[2] Because ACIA does not dispute any of the facts submitted by Menard and Ali in support of their motion for summary or any of the additional facts submitted in opposition to ACIA's motion for summary judgment, the Court finds that it can rely on those facts when deciding whether ACIA has a duty to defend in this case. As the Illinois Supreme Court stated in *Pekin*, requiring a trial court "to look solely to the complaint in the underlying action to determine coverage would make the declaratory proceeding "little more than a useless exercise possessing no attendant benefit and would greatly diminish a declaratory action's purpose of settling and fixing the rights of the parties." 237 Ill.2d at 456.

Next, the Court must determine whether Ali is covered by the Policy. As set forth above, the ACIA Policy specifically provides that any individual using

---

[2] *See generally* Menard and Ali's SOF in Support of their Motion for Summary Judgment [ECF No. 31]; ACIA's Responses to Menard and Ali's SOF [ECF No. 37]; Menard and Ali's SOAF in Opposition to ACIA's Motion for Summary Judgment [ECF No. 35]; and ACIA's Responses to Menard and Ali's SOAF [ECF No. 41].

10

Estopinan's vehicle with permission is an additional insured under the Policy. *See* ACIA's Complaint for Declaratory Judgment [ECF No. 1], at ¶15 and Exhibit A (stating "Insured Person(s) means … any other person using [your car] with your permission"). ACIA does not dispute that Ali was helping Estopinan load his truck with his permission. *See* Menard's and Ali's SOF [ECF No. 31], at ¶36; ACIA's Responses to Menard's and Ali's SOF [ECF No. 37], at ¶36. Accordingly, pursuant to the terms of the ACIA Policy, Ali is an insured person as defined by the Policy.

Coverage in this case, therefore, turns on whether loading the doors onto Estopinan's truck constitutes "use" of the vehicle under the ACIA Policy, and the Court must decide whether Ali was "using" Estopinan's truck in manner that would trigger coverage. Without citation to any persuasive authority, ACIA argues that Ali could not have been using Estopinan's truck when he was loading the doors onto it. Specifically, Menard and Ali contend that "[c]ommon sense dictates that one person cannot be 'using' a car at the same time he is using a forklift. The only logical inference is that the car was stationary and neither Ali nor Estopinan were 'using' it." ACIA's Memorandum in Support its Motion for Summary Judgment, [ECF No. 27], at 8. A similar argument has been rejected by an Illinois court. *See Menard, Inc. v. Country Preferred Ins. Co.,* 2013 Ill. App. 3d 120340, at ¶21 (3rd Dist. July 18, 2013) (holding that "we reject any argument that Illinois law equates 'use' of a vehicle with only operating or driving, as 'use' has a broader definition").[3]

---

[3] The Illinois Supreme Court has noted that "the use of an automobile has been held to denote its employment for some purpose of the user." *Schultz v. Illinois Farmers Insurance Co.,* 237 Ill.2d 391, 401, 402-03, 341 Ill. Dec. 429, 930 N.E.2d 943 (2010) (reviewing cases that conclude that "use" is not limited to operating a vehicle, and holding that a passenger qualifies as an

11

ACIA's argument that Ali was not using Estopinan's truck because he was operating the order selector also is belied by the undisputed facts. Specifically, ACIA does not dispute that "Ali pulled the order selector up to within two to three feet of the passenger side of Estopinan's pickup truck" and that "<u>Ali got off the order selector</u>" to help Estopinan place the doors onto the truck. *See* Menard's and Ali's SOAF [ECF No. 35], at ¶14; ACIA's Resp. to Menard's and Ali's SOAF, [ECF No. 41], at ¶14 (emphasis added). The Court is not persuaded by ACIA's argument that Ali was using the order selector and, therefore, could not be using Estopinan's truck.

The Court finds this interpretation also is consistent with the language in ACIA's Policy. Although the Policy does not define "use," the Policy specifically states that its liability coverage does not cover "punitive damages, exemplary damages, or statutory damages for which an insured person is legally liable because of bodily injury or property damage arising out of the ownership, maintenance, or <u>use including the loading and unloading of the insured car</u>." *See* Menard's and Ali's SOAF [ECF No. 35], at ¶27; ACIA's Resp. to Menard and's Ali's SOAF, [ECF No. 41], at ¶27 (emphasis added); *see also* ACIA's Complaint for Declaratory Judgment [ECF No. 1], Exhibit A. Construing the policy liberally and in favor of the insured as this Court is required to do, the Policy clearly contemplates that "use" includes the act of loading

---

insured because the passenger is a permissive user). Indeed, as the *Schultz* court noted, some jurisdictions have construed "use" to include loading and unloading of the vehicle. *Schultz*, 237 Ill.2d at 402 n. 3, 341 Ill. Dec. 429, 930 N.E.2d 943 (citing cases). *See also Blasing v. Zurich American Insurance Co.,* 2013 Wis. App. 27, at ¶19, 346 Wis.2d 30, 827 N.W.2d 909 (Wis. App. Ct. 2013) (holding that a Menard's employee who was loading lumber onto a plaintiff's vehicle was using the vehicle and thus covered as a permissive user under plaintiff's personal automobile insurance policy).

12

or unloading an insured vehicle, and the Court is not persuaded by ACIA's argument that the process of loading and/or unloading the insured vehicle would not be covered under the Policy.

As set forth above, when interpreting an insurance policy, courts are required to read the insurance policy as a whole and interpret any ambiguities in favor of the insured. *Liberty Mutual Ins. Co.*, 402 Ill.App.3d at 39 (citing *American States Ins. Co. v. Kolmos*, 177 Ill.2d 473, 479, 227 Ill. Dec. 149, 687 N.E.2d 72 (1997)). More specifically, policy provisions that limit or exclude coverage are to be construed liberally in favor of the insured, and any doubts about the duty to defend are resolved in favor of the insured. *Id.* Based on this Court's interpretation of ACIA's Policy and construing the Policy in favor as of the insured as the law requires, the Court finds that the act of loading and unloading Estopinan's vehicle falls within the definition of use as contemplated by specific language of the Policy and, therefore, constitutes use of the vehicle. Therefore, that conduct is covered by ACIA's Policy.

Based on the undisputed facts and reasonable interpretation of ACIA's Policy, the Court finds that Ali was using Estopinan's truck with Estopinan's permission and is an insured person covered by ACIA's Policy, and the act of loading and/or unloading a vehicle falls within the meaning of use as contemplated in ACIA's Policy. The Court, therefore, finds that pursuant to the terms of its Policy ACIC has a duty to defend Menard and Ali in the Underlying Lawsuit.

**II. Resolution of ACIA's Duty to Indemnify Is Premature**

The duty to indemnify is defined as an insurer's duty "to reimburse the insured for losses it incurs directly or to pay sums that the insured becomes legally obligated to pay others." *Keystone Consol. Indus., Inc. v. Emps. Ins. Co. of Wausau*, 456 F.3d 758, 762 (7th Cir. 2006). The duty to indemnify is more narrow than the duty to defend (*Outboard Marine Corp.*, 154 Ill. 2d at 127), and it applies when the insured's claim "actually falls within the scope of coverage." *Madison Mut. Ins. Co. v. Diamond State Ins. Co.*, 851 F.3d 749, 753 (7th Cir. 2017). In a declaratory judgment action, the court cannot "decide issues of ultimate fact that could bind the parties to the underlying litigation." *Allstate Ins. Co. v. Kovar*, 363 Ill. App. 3d 493, 299 Ill. Dec. 916, 842 N.E.2d 1268, 1275 (2006)); *see generally Maryland Cas. Co. v. Peppers*, 64 Ill. 2d 187, 355 N.E.2d 24, 30 (Ill. 1976). "In other words, the question of whether the insurer has a duty to indemnify the insured for a particular liability is only ripe for consideration if the insured has already incurred liability in the underlying claim against it." *Outboard Marine*, 154 Ill. 2d at 127.

In this case, Menard and Ali agree that any claim they may have for indemnification is not ripe at this time because liability has not been determined in the Underlying Lawsuit. *See* Menard's and Ali's Response in Opposition to ACIA's Motion for Summary Judgment. [ECF No. 34], at 10. Therefore, the Court declines to grant summary judgment on the issue of whether ACIA has a duty to indemnify Menard and Ali because such a determination is premature.

14

## CONCLUSION

For the reasons discussed in the Court's Memorandum Opinion and Order, Defendants/Counter-Plaintiffs Menard and Ali's Motion for Summary Judgment [ECF No. 30] is granted, and Plaintiff/Counter-Defendant ACIC's Motion for Summary Judgment [ECF No. 26] is denied with prejudice as to ACIA's duty to defend and without prejudice as to ACIA's duty to indemnify.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: November 15, 2021